Robert R. DAVENPORT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1665.

United States Court of Veterans Appeals.

Argued Jan. 13, 1995.

Decided March 30, 1995.

Robert R. Davenport, pro se, filed a brief.

Susan A. Wuchinich and David W. Engel, with whom Mary Lou Keener, Gen. Counsel, and Norman G. Cooper, Asst. Gen. Counsel, were on the brief, for the appellee.

Ruth Eisenberg, with whom Gershon M. Ratner was on the brief, for the American Legion as amicus curiae.

Lora M. Rath, with whom Robert L. Nelson and Michael P. Horan were on the brief, for the Paralyzed Veterans of America as amicus curiae.

Before KRAMER, FARLEY, and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from a September 10, 1991, decision of the Board of Veterans' Appeals (BVA or Board). The appellant sought vocational rehabilitation training under chapter 31, title 38, U.S.Code. As required by Department of Veterans Affairs (VA) regulations implementing chapter 31, the BVA denied the appellant's claim because it determined that the appellant's service-connected disability had not caused an employment handicap. The issue presented by this appeal is whether the Secretary's imposition by regulation of a causal nexus requirement, i.e., that a veteran's service-connected disability must "materially contribute" to the veteran's employment handicap, is consistent with the controlling statute, 38 U.S.C. § 3102. For the reasons set forth below, the Court concludes that the pertinent subsections of the regulation are not consistent with 38 U.S.C. § 3102 and are therefore "unlawful and set aside." 38 U.S.C. § 7261(a)(3)(C). As a consequence, the BVA decision will be vacated and the matter remanded for adjudication in accordance with the lawful standard.

## I.

After receiving a bachelor of arts degree in history from Middlebury College (Record (R.) at 3), the appellant served on active duty in the United States Navy from March 23, 1973, to January 20, 1977. R. at 1. He attended flight training school in Pensacola, Florida, and Corpus Christi, Texas, and was qualified as a naval flight officer. R. at 3. Before his transfer to the Navy Reserves in January 1977, he was promoted to the rank of lieutenant. R. at 1. Following active duty, the appellant received educational assistance under chapter 34 of title 38 of the United States Code, *see* 38 U.S.C. § 3451, *et seq.*, to attend St. John's University School of Law from January 1977 to June 1979 and to take a New York State bar review course from June through July 1979. R. at 4, 6–39, 51–55. He worked as an attorney with the United States Department of Justice and the Department of the Navy from 1979 until 1982. R. at 43, 92, 98, 104, 116, 127, 162–63. The appellant used the remainder of his entitlement to chapter 34 educational assistance to attend the Harvard University Graduate School of Business Administration from September 1982 until May 1984 when he received an MBA degree. R. at 56–72.

In a rating decision dated April 1980, the Los Angeles, California, VA Regional Office (RO) awarded the appellant service connection for onychomycosis, evaluated as 0% disabling, from November 1, 1979. R. at 82. (Onychomycosis is a "fungal infection of the nail plate, usually caused by species of *Epidermophyton, Microsporum,* and *Trichophyton,* and producing nails that are opaque, white, thickened, friable, and brittle." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1177 (27th ed. 1988).) In December 1986, the appellant applied for an increased rating. R. at 74–80. At a personal hearing, he testified to his treatment during service and to post-service treatment with griseofulvin, which · caused headaches and photosensitivity. He stated that he had been informed by his treating physicians that, although the medication might have a temporary beneficial effect, the disorder would recur. R. at 74. In a rating decision dated February 12, 1987, the RO increased to 10% the appellant's service-connected rating for onychomycosis (with tinea pedis bilateral), effective May 22, 1986. R. at 82. The appellant did not appeal that rating decision.

In June 1987, the appellant filed with the RO an application for vocational rehabilitation under chapter 31 of title 38, U.S.Code, seeking financial assistance for the purpose of taking the California bar examination. R. at 85, 91–100. In August 1987, he was exam-

ined by a VA counseling psychologist. R. at 98–100. The psychologist noted:

> **Limitations imposed by veteran's disabilities to employment:** Veteran's service-connected disability might conceivably impose some restrictions with respect to type of footwear worn by veteran. He might also find that prolonged periods of standing or walking would exacerbate the condition. The veteran states that the medication (griseofulvin) causes him at times to experience headaches.
>
> **Impairment of employability:** These limitations restrict the range of employment opportunities available to the veteran and his service connected disability does materially contribute [to] the impairment.
>
> However, the veteran is trained for employment in a semi-sedentary occupation. The impairment to employability has been overcome through education and training[.]

R. at 100. The psychologist concluded that the appellant "does not have an employment handicap. Veteran's employment record indicates that he is capable of obtaining and sustaining himself in gainful employment in occupations compatible with his disability." *Ibid.* The RO provided the appellant with a Statement of the Case in September 1987 (R. at 103–05), and the appellant filed a VA Form 1–9, "APPEAL TO BOARD OF VETERANS' APPEALS," shortly thereafter (R. at 107–12). In a decision dated February 18, 1988, the BVA denied the appellant's claim of entitlement to vocational rehabilitation for purposes of taking the California bar examination, concluding that the "veteran's service-connected onychomycosis with bilateral tinea pedis does not materially contribute to an impairment of employment in the occupation for which the veteran is qualified." R. at 118.

In July 1989, the appellant again applied for chapter 31 vocational rehabilitation, this time seeking financial assistance to attend a master's degree program in film arts at either the University of Southern California or the University of California, Los Angeles. R. at 120–25. In November 1989, he was evaluated again by a VA counseling psychologist, who concluded:

> Mr. Davenport was found to not have an impairment to employability during this evaluation. His service-connected foot condition does not appear to prevent him from engaging in employment for which he is currently suited. An employment handicap was not found.
>
> It was suggested that he might avail himself of placement services which he shrugged off as "not meeting his needs."

R. at 129.

The appellant filed a Notice of Disagreement (NOD) in November 1989 (R. at 132), and the RO provided him with a Statement of the Case (SOC) in December 1989 (R. at 134–36). In February 1990, the appellant requested administrative review of the decision by the VA Central Office pursuant to 38 C.F.R. § 21.59 (1994). R. at 138–51, 172, 174, 185. After originally denying the appellant's request for administrative review because he already had initiated an appeal to the BVA, the RO, in a letter dated May 31, 1990, notified the appellant that it would grant the appellant's request if he would first rescind in writing his previously filed NOD. R. at 172. In August 1990, the Vocational Rehabilitation and Education Service Director concluded that the appellant did not have an impairment of employability, noting that "[t]here is no evidence that the service[-]connected disability, i.e., Onychomycosis with tinea pedis bilateral (10%) has caused an employment handicap, especially considering the veteran's educational and work history." R. at 176. The Director noted that VA's previous request that the appellant withdraw his appeal to the BVA was neither necessary nor appropriate, and directed the RO to assist the appellant in continuing his appeal. *Ibid.*

The appellant was notified of the decision by letter dated August 20, 1990 (R. at 179), and he filed another NOD several days later (R. at 181). The RO provided him with an SOC in September 1990 (R. at 184–86), and he filed a VA Form 1–8, "CERTIFICATION OF APPEAL," in January 1991 (R. at 188). He appeared at a personal hearing before a travelling section of the Board in March 1991. R. at 206–28. When questioned about how his service-connected fungal condition affected his employability, he testified that his medication causes headaches and an inability

to concentrate and "diminishes [his] motivation ability to mobilize his energies." R. at 215. When asked how his service-connected disability would interfere with his employment in the legal or business fields, but not with the type of work for which he now wished to be trained, i.e., the film industry, he testified that in the film industry he would spend his time in a dry atmosphere, i.e., an office or a studio, and that the film industry allowed a more casual dress code which would permit him to wear tennis shoes and athletic socks. R. at 219–20, 223. He also contended that the headaches caused by the medication for his foot condition (griseofulvin) were much more of an impediment to a career in law or business because of the stress which accompanies jobs in those fields. R. at 224–25.

In its September 10, 1991, decision on appeal to this Court, the Board stated that entitlement to chapter 31 vocational rehabilitation training

> requires that the veteran [have] a service-connected disability which causes or materially contributes to an employment handicap. In other words, this disability materially and detrimentally has an impact on his ability to obtain and sustain employment. His sole service-connected disability is a fungal infection affecting his feet, evaluated as 10 percent disabling. He goes once or twice a year for treatment and uses topical ointments and salves, takes griseofulvin and normally wears padded or white socks. While he has asserted that the medication which he must take for the control of this disorder causes headaches which impair his concentration and motivation for employment, the Board notes that the clinical record fails to document any complaints of headaches due to the use of this medication. Moreover, during a recent [VA] examination conducted in November 1990, the onychomycosis affecting the veteran's feet was described as not severe and, again, there were no complaints or findings of any headaches whatsoever. Under these circumstances, it is not reasonable to find that the veteran's service-connected dermatological disorder affecting his feet materially contributes to impairment of employability in any occupa-

tion for which he is trained or in which he has expressed an interest. Accordingly, we must find that the service-connected disability does not cause an employment handicap within the meaning of 38 C.F.R. [§ ] 21.40.

*Robert R. Davenport,* BVA 91–26909, at 4 (Sept. 10, 1991). A timely appeal to this Court followed.

On May 6, 1994, this Court ordered further briefing from the Secretary, and invited the appellant and any interested parties to respond, on the following issue:

> Appellant has contended, both in his briefs filed with this Court and during a personal hearing before the Board (*see* R. at 212), that because he has a service-connected disability rated 10% disabling and an employment handicap he is entitled to a vocational rehabilitation program under chapter 31 of title 38 of the Code, without regard to whether his service-connected disability contributes to his employment handicap. Appellant's argument raises the question whether the regulatory requirement of 38 C.F.R. § 21.51 (1993) that the service-connected disability "must materially contribute to the [employment] impairment," *see* 38 C.F.R. § 21.51(c)(2), (e) (1993), is a valid exercise of the Secretary's rulemaking authority under 38 U.S.C. § 501 or whether the regulation is in excess of statutory authority given the lack of a causation element in the basic entitlement statute, 38 U.S.C. § 3102 (formerly 38 U.S.C. § 1502), applicable at the time appellant submitted his claim in 1989.

*Davenport v. Brown,* 6 Vet.App. 430, 431 (1994) (per curiam order). The Secretary submitted his memorandum on July 21, 1994; the Paralyzed Veterans of America and the American Legion later submitted opposing memoranda as amici curiae. On January 13, 1995, counsel for the Secretary and amici participated in an oral argument.

## II.

### A. Statutory Law

The statute in effect when the appellant filed his claim for vocational rehabilitation in June 1989 did not require a causal nexus

between a service-connected disability and an employment handicap. *See infra* part II.C. That statute, 38 U.S.C. § 1502, provided, in pertinent part, as follows:

A person shall be entitled to a rehabilitation program under the terms and conditions of this chapter if such person—

(1)(A) is a veteran who has a service-connected disability which is, or but for the receipt of retired pay would be, compensable under chapter 11 of this title and which was incurred or aggravated in service on or after September 16, 1940 . . .; and

(2) is determined by the Administrator [the predecessor of the Secretary] to be in need of rehabilitation because of an employment handicap.

38 U.S.C. § 1502 (1988).

A November 1990 amendment added a requirement that the service-connected disability be compensable at a rate of 20% or more. Pub.L. No. 101–508, § 8021(a), 104 Stat. 1388, 1388–347 (Nov. 5, 1990). Section 8021(b) of Pub.L. No. 101–508 specifically provided, however, that the requirement that veterans have at least a 20% rating applied only to those who "originally appl[ied] for assistance under chapter 31 of title 38 . . . on or after November 1, 1990." 38 U.S.C. § 3102 note. Therefore, because the appellant filed his claim for vocational rehabilitation in June 1989, i.e., before November 1, 1990, his appeal is not subject to the 20% or more rating requirement added by the 1990 amendment.

In August 1991, as part of a comprehensive renumbering of title 38, U.S.Code, former § 1502 was redesignated as § 3102. Pub.L. No. 102–83, § 5(a), 105 Stat. 378, 406 (Aug. 6, 1991). Minor changes were made again in 1992. Pub.L. No. 102–568, § 404(a), 106 Stat. 4320, 4338 (Oct. 29, 1992). The term "employment handicap" is, and was at times relevant to this appeal, defined as "an impairment of a veteran's ability to prepare for, obtain, or retain employment consistent with such veteran's abilities, aptitudes, and interests." 38 U.S.C. § 3101(1).

## B. *Regulations*

When the appellant filed his claim, 38 C.F.R. § 21.40 provided that a veteran was entitled to chapter 31 vocational rehabilitation benefits if the veteran "has a service-connected disability which is, or but for the receipt of retired pay, would be, compensable under 38 U.S.C. Chapter 11 and which was incurred or aggravated in service on or after September 16, 1940," and if "[t]he veteran is determined to be in need of rehabilitation to overcome an employment handicap." 38 C.F.R. § 21.40(a)(1), (b) (1988). (The 1988 version is cited because the current regulation reflects the November 1990 change in law. The current statutes and regulations will be cited and quoted if they are identical to the 1989 versions; otherwise the applicable earlier versions will be used.)

The definition of the term "employment handicap" in 38 C.F.R. § 21.51(b) mirrors that contained in 38 U.S.C. § 3101(1). However, 38 C.F.R. § 21.51(c) additionally provides:

(c) *Components of employment handicap.* Components of employment handicap include:

(1) *Impairment.* This term means the restrictions on employability caused by:

(i) The veteran's service and nonservice-connected disabilities;

. . . .

(2) *Service-connected disability.* The veteran's service-connected disability need not be the sole or primary cause of the employment handicap but *it must materially contribute to the impairment described in paragraph (c)(1) of this section.* Therefore its effects must be identifiable, measurable, or observable.

38 C.F.R. § 21.51(c) (1994) (last emphasis added).

Other subsections of § 21.51 also reflect the requirement that the service-connected disability "materially contribute to the impairment." For instance, 38 C.F.R. § 21.51(f)(2) provides that "[a]n employment handicap does not exist when *any* of the following conditions is present: . . . . (ii) The veteran's employability is impaired, but his or her service-connected disability does

not materially contribute to the impairment of employability." 38 C.F.R. § 21.51(f)(2) (1994); *see also* 38 C.F.R. § 21.51(e), (f)(1)(ii) (1994).

## III.

Section 501(a) of title 38, U.S.Code, provides that "[t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are *consistent with those laws* . . . ." (Emphasis added.) The issue before this Court is whether VA's imposition by regulation of a causal nexus, i.e., a requirement that a veteran's service-connected disability "materially contribute" to the veteran's employment handicap, is consistent with the underlying statute, 38 U.S.C. § 3102.

### A.  The Plain Meaning of the Statute

The proper starting point in analyzing whether a regulation is consistent with a statute is to look at the language of the statute itself.  *Gardner v. Derwinski,* 1 Vet. App. 584, 586–88 (1991), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* —— U.S. ——, 115 · S.Ct. 552, 130 L.Ed.2d 462 (1994); *see also Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781; *see also Conroy v. Aniskoff,* —— U.S. ——, ——, 113 S.Ct. 1562, 1564, 123 L.Ed.2d 229 (1993) (upholding the plain meaning of a statute where it was "unambiguous, unequivocal, and unlimited").

The version of § 1502, title 38, U.S.Code (hereinafter § 3102) in effect in 1989 provided that a veteran applying for chapter 31 benefits must (1) have a service-connected disability "which is, or but for the receipt of retired pay would be, compensable under chapter 11 of this title," and (2) be "determined by the [Secretary] to be in need of rehabilitation because of an employment

handicap."  Although earlier versions of the relevant statute did require a causal nexus between the service-connected disability and the employment handicap, *see infra* part III.C, that requirement was dropped as a result of a 1980 amendment.  The language of the 1989 version, as well as that of the statute presently in effect, makes no reference whatsoever to such a nexus requirement.  The simple but compelling conclusion is that 38 U.S.C. § 3102 creates an entitlement to chapter 31 vocational rehabilitation if a veteran has a service-connected disability and an employment handicap;· § 3102 does not require that there be a causal relationship between the two.

### B.  The Secretary's Arguments

As in *Gardner,* "[d]espite the absence from the statutory language of so much as a word about [a causal nexus], the Government proposes two interpretations in attempting to reveal a [causal nexus requirement] implicit in the text. . . ."  —— U.S. at —— - ——, 115 S.Ct. at 554–55.  The first is that there is a "gap" in the · statute which the Secretary is authorized to fill by regulation; the second is that § 3102 contains an implied causal nexus requirement.  Again, as in *Gardner,* neither argument is persuasive.

### 1.  The "Gap" Argument

Viewing the statute as creating an opportunity, not a mandate, the Secretary relies upon *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781 (when Congress has not "directly spoken to the precise question at issue," the agency interpretation of the particular statute will be upheld as long as it is "based on a permissible construction" of the statute), and argues that 38 C.F.R. § 21.51 is a "permissible construction" of § 3102.  Secretary's memorandum at 35–41.  The Secretary's argument boils down to this: because the statute does not explicitly state that there does not have to be a causal relationship between the service-connected disability and the employment handicap, there is a "gap" in the statute, and the Secretary can fill this gap pursuant to his general rulemaking authority.

We disagree.  Section 3102 provides that "[a] person *shall be entitled to*" chapter 31

benefits provided that person meets the two, and only two, requirements imposed by the statute. 38 U.S.C. § 3102 (emphasis added). "The language is mandatory, leaving no room for the VA to impose additional restrictions on entitlement." *Skinner v. Brown*, 27 F.3d 1571, 1573 (Fed.Cir.1994). There simply is no "gap" to be filled. To the extent that the Secretary relies upon the proposition that "'courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute,'" *Clarke v. Securities Indust. Ass'n*, 479 U.S. 388, 403, 107 S.Ct. 750, 759, 93 L.Ed.2d 757 (1987) (quoting *Investment Co. Inst. v. Camp*, 401 U.S. 617, 626–27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971)), such reliance is misplaced. Courts may defer to "an administrative agency's interpretation of an applicable statute[ ] ... only when the statute is unclear." *Gardner*, 1 Vet.App. at 588 (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981)). Since § 3102 is clear as it relates to the issue in dispute, such deference is unwarranted. *See Gardner*, —— U.S. at ——, 115 S.Ct. at 557.

If we were to credit the Secretary's argument under the circumstances presented here, we would be condoning nothing less than usurpation by VA of the legislative function of Congress. While it is true that delegations by Congress of its legislative responsibility have been upheld with some frequency (*see Bowsher v. Synar*, 478 U.S. 714, 736 n. 10, 106 S.Ct. 3181, 3193 n. 10, 92 L.Ed.2d 583 (1986)), we are unable to find any such delegation of authority relevant to this issue. *Compare* 38 U.S.C. § 1154(a) ("The Secretary shall include in the regulations pertaining to service-connection of disabilities ... the provisions required by section 5 of the Veterans' Dioxin and Radiation Exposure Compensation Standards Act (Public Law 98–542; 98 Stat. 2727)."); *see also* 38 U.S.C. § 3104(a) ("Services and assistance which the Secretary may provide under this chapter, pursuant to regulations which the Secretary shall prescribe, include the following....."). Moreover, in delegating its legislative authority, Congress must "'lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Mistretta v. United States*, 488 U.S. 361, 372, 109 S.Ct. 647, 655, 102 L.Ed.2d 714 (1989) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)); *see also Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696–98, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604 (1991). Here, there is neither a specific delegation of legislative authority nor a conforming intelligible principle. Nor is this an instance where "Congress has *explicitly* left a gap for the agency to fill." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782 (emphasis added). While the Secretary is authorized to promulgate regulations that are consistent with title 38, U.S.Code, *see* 38 U.S.C. § 501(a), the Secretary is not authorized to disguise the creation of additional requirements or limitations as interpretative regulations. *See generally Pauley*, 501 U.S. at 696–98, 111 S.Ct. at 2534; *Mistretta*, 488 U.S. at 371–73, 109 S.Ct. at 654–55; *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83.

### 2. The "Implied Causal Nexus" Argument

This argument runs as follows: Because there are other statutes in chapter 31 that do contain express causal nexus requirements, it would lead to an "absurd result," and perhaps "raise concerns of fairness under the Constitution's Equal Protection Clause," if we refuse to infer such a requirement in § 3102. Secretary's memorandum at 44. The Secretary relies on two statutes, § 3104(a)(1)(A) and § 3103(c)(2)(A), and, as the American Legion correctly noted, another statute, § 3105(c)(1), also requires a causal nexus (American Legion memorandum at 9–10). However, an examination of these statutes, separately and in the overall context of chapter 31, illustrates that the Secretary's argument is without merit.

Even though § 3104(a)(1)(A) does not require a causal nexus, the Secretary urges us to read one into the statute, which, the Secretary then argues, would make it necessary also to infer one in § 3102. The statute provides:

(a) Services and assistance which the Secretary may provide under this chapter,

pursuant to regulations which the Secretary shall prescribe, include the following:

(1) Evaluation, including periodic reevaluations as appropriate with respect to a veteran participating in a rehabilitation program, of the potential for rehabilitation of a veteran, including diagnostic and related services (A) to determine whether such veteran's *disability or disabilities* cause a serious employment handicap and whether a vocational goal is feasible for such veteran, and . . . .

38 U.S.C. § 3104(a)(1) (emphasis added). Preliminarily, we note that the term "serious employment handicap" is a term of art in the statutory scheme; it is separately defined in 38 U.S.C. § 3101(7). Although § 3104(a)(1) does not impose a nexus requirement between a service-connected disability and a serious employment handicap, counsel for the Secretary argued at length that the Court should divine one from Congress' use of both the singular form "disability" and the plural form "disabilities." According to the Secretary, a nexus requirement is implied by the inclusion of the plural because one of the "disabilities" would have to be the service-connected one, and, therefore, the service-connected disability would have to "cause," at least in part, the serious employment handicap. The Secretary then asks us to infer a causal nexus requirement in § 3102 for all veterans because one should be inferred in § 3104(a)(1) for veterans with a serious employment handicap.

Refutation of this argument is inherent in its recitation. A veteran could have one service-connected disability and two non-service-connected disabilities, and if only the two non-service-connected disabilities "cause" the serious employment handicap, the literal requirements of § 3104(a)(1)(A) would still be satisfied, and an evaluation prescribed, without a causal nexus.

Sections 3103(c)(2) and 3105(c)(1), which provide for relief from time limits imposed by other statutory provisions in chapter 31, do indeed require a showing of a causal nexus between the claimant's service-connected disability and the claimant's employment handicap. Specifically, § 3103(c) allows a veteran to obtain chapter 31 benefits after the 12–year statutory period of eligibility provided by 38 U.S.C. § 3103(a) has expired if (1) the veteran has a "serious employment handicap" and (2) the veteran can meet one of three other conditions. 38 U.S.C. § 3103(c)(2). One of these conditions is

that such veteran had previously been rehabilitated to the point of employability but (A) the need for such services *had arisen out of a worsening of such veteran's service-connected disability* that precludes such veteran from performing the duties of the occupation for which such veteran was previously trained in a vocational rehabilitation program under this chapter . . . .

38 U.S.C. § 3103(c)(2) (emphasis added). Section 3105(c)(1) provides that a veteran who is already involved in a chapter 31 rehabilitation program (regardless of whether or not he has a "serious employment handicap") can have the duration of the program extended beyond the 48–month time limit established by § 3105(b) if "such veteran had previously been rehabilitated to the point of employability but . . . such veteran's need for further vocational rehabilitation *has arisen out of a worsening of such veteran's service-connected disability* . . . ." 38 U.S.C. § 3105(c)(1) (emphasis added).

The Secretary argues that, given the causal nexus requirement in § 3103(c)(2)(A), construing 38 U.S.C. § 3102 as not containing such a requirement would lead to an absurd result because it would

impose, as a prerequisite to participation in the vocational rehabilitation program, a causation requirement on a veteran determined to have a serious handicap and not [ ] impose a similar requirement on a non-seriously handicapped veteran. To do so would place a disparate burden upon those seriously handicapped ones who are most in need and deserving of assistance and would defy congressional intent.

Secretary's memorandum at 43–44.

The Secretary has taken the provisions of § 3103(c)(2) entirely out of context to make it appear that a "disparate burden" is being imposed on "seriously handicapped" veterans when § 3103(c)(2)(A) is actually advantageous to such veterans. Section

3103(c)(2)(A) does not require that "seriously handicapped" veterans have a causal nexus between their employment handicaps and their service-connected disabilities in order to get basic chapter 31 benefits; it just imposes this requirement in order for them to get a longer period of eligibility for vocational rehabilitation than a veteran with an "employment handicap." While § 3105(c)(1) differs from § 3103(c)(2) in that it applies to all veterans who are receiving chapter 31 benefits, it is similar in that it allows for benefits above and beyond what chapter 31 normally provides; i.e., a rehabilitation program longer than 48 months. Thus, Congress required veterans seeking periods of entitlement or eligibility beyond what chapter 31 basically allows to demonstrate that their service-connected disabilities caused their impairments. We fail to see how the inclusion of this requirement here makes "absurd" its omission in the statute providing for basic entitlement to chapter 31 benefits; in fact, we find nothing at all unreasonable in this statutory scheme.

Even if the Secretary's argument did not fall of its own weight, each of two interpretive principles would require its rejection. First, the Supreme Court has consistently held that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Gardner,* —— U.S. at ——, 115 S.Ct. at 556 (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (internal quotation marks omitted)); *see King v. St. Vincent's Hospital,* 502 U.S. 215, 220–21 n. 9, 112 S.Ct. 570, 574 n. 9 (1991); *see also Central Bank v. First Interstate Bank,* —— U.S. ——, ——, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994); *Ad Hoc Committee v. United States,* 13 F.3d 398, 401 (Fed.Cir.1994). Second, even were we to find any ambiguity, which we do not, the Supreme Court has counseled strongly that "interpretative doubt is to be resolved in the veteran's favor." *Gardner,* —— U.S. at ——, 115 S.Ct. at 555 (citing *King,* 502 U.S. at 220–21 n. 9, 112 S.Ct. at 574 n. 9).

Finally, in both the brief and at oral argument counsel for the Secretary made brief but unexplained references to the equal protection component of the due process clause of the Fifth Amendment to the Constitution. Raising the specter of reversal on constitutional grounds should this Court not accept the Secretary's causal-nexus-by-implication-to-prevent-absurd-result argument, the Secretary cited two cases as general authority, *Massachusetts v. Mellon,* 262 U.S. 447, 485–87, 43 S.Ct. 597, 600–01, 67 L.Ed. 1078 (1923) and *South Carolina v. Katzenbach,* 383 U.S. 301, 324, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966). We are unable to discern how these cases support such an argument. Moreover, and as noted above, there is more than a rational basis for according disparate, i.e., more favorable, treatment to veterans whose employment handicaps are due to service-connected disabilities.

## C. Legislative History

"Although '[r]ecourse to the legislative history ... is unnecessary in light of the plain meaning of the statutory text,' we may look to the legislative history ' "to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language." ' " *Gardner,* 5 F.3d at 1459 (quoting *Darby v. Cisneros,* —— U.S. ——, ——, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993), and *Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395 (Fed.Cir.1990) (quoting *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir.1989)). However, "because the statutory language is clear, 'we do not analyze th[e] history from a neutral viewpoint.' The Secretary must make an extraordinarily strong showing of clear legislative intent in order to convince us that Congress means other than what it ultimately said." *Gardner,* 5 F.3d at 1460 (quoting *Glaxo,* 894 F.2d at 396) (citation omitted).

Laws have provided for vocational rehabilitation for veterans at least since 1917. *See* Pub.L. No. 65–90, § 304 (1917) ("That in cases of dismemberment, of injuries to sight or hearing, and of other injuries commonly causing permanent disability, the injured person shall follow such course or courses of rehabilitation, reeducation, and vocational training as the United States may provide or

procure to be provided."). As noted above, prior to 1980, a causal nexus between a veteran's service-connected disability and an employment handicap was a condition precedent for eligibility for vocational rehabilitation. For example, in 1943, Congress passed a law allowing for vocational rehabilitation for World War II veterans with service-connected disabilities who were, inter alia, "in need of vocational rehabilitation *to overcome the handicap of such disabilit[ies]*." Pub.L. No. 78–16, § 2 (1943) (emphasis added). Although the statute was amended a few times before 1980, the requirement that the service-connected disability have a causal relationship to the employment handicap was always retained. See, e.g., Pub.L. No. 81–894 (1950) ("[S]ervice ... on or after June 27, 1950, ... shall afford basic entitlement to vocational rehabilitation ... needed to overcome the handicap of a disability incurred in or aggravated by such service for which compensation is payable...."); Pub.L. No. 87–815, § 7(a) (1962) (amending 38 U.S.C. § 1502 to read as follows: "Every veteran who is in need of vocational rehabilitation on account of a service-connected disability which is, or but for the receipt of retirement pay would be, compensable under chapter 11 of [title 38] shall be furnished ... vocational rehabilitation...."); Pub.L. No. 93–508, § 101 (1974) (keeping the same language, but liberalizing the statute so that all veterans needed only a compensable service-connected disability; prior to the amendment, veterans who did not serve during wartime needed a 30% rated service-connected disability in order to be eligible).

A number of bills proposing amendments to chapter 31 were introduced in both chambers of Congress in 1979 and 1980; the Secretary advises that at least seven bills passed one of the two chambers. *See* Secretary's memorandum at 19. Ultimately, three bills were merged to form the compromise bill finally enacted, only two of which relate to the issue at hand, H.R. 7394, 96th Cong., 2d Sess. (1980), and S. 1188, 96th Cong, 2d Sess. (1980).

H.R. 7394 included a nexus requirement; § 1501(1) of that bill defined the term "vocational rehabilitation" as those services which "are determined by the Administrator to be needed to render a veteran who has an employment handicap *because of* service-connected disability employable and employed...." (Emphasis added.) As originally proposed by the administration and introduced in the Senate on May 21, 1979, at the request of the Administration, S. 1188, which was identical to H.R. 7394, also defined "vocational rehabilitation" to include a nexus requirement. However, on February 19, 1980, Senator Alan Cranston, Chairman of the Senate Veterans' Affairs Committee, introduced as an amendment to S. 1188 a substitute bill which omitted the definition of the term "vocational rehabilitation," and did not otherwise include a nexus requirement.

The Committee adopted and the Senate passed the amended version of S. 1188. The committee report that accompanied S. 1188 was clear on the issue of a causal nexus requirement:

> Under present section 1502(a), basic entitlement is limited to veterans who are in [need] of vocational rehabilitation, which is defined in present section 1501(2) as training to restore "employability ... lost by virtue of a handicap due to service-connected disability." Thus, under current law, entitlement is limited to veterans who need training to overcome an employment handicap resulting from service-connected disability, and *the Committee bill would eliminate the requirement of a determination that the veteran's service-connected disability constitutes some form of employment handicap.*

S.Rep. No. 746, 96th Cong., 2d Sess. 73–74 (1980) (emphasis added).

The Veterans' Rehabilitation and Education Amendments of 1980 enacted by Congress contained the language of the Senate bill. Although not specifically mentioning the deletion of a causal nexus requirement, the ensuing joint statement did indicate that the House had receded on the issue of the substitution of the definition of "vocational rehabilitation program" in S. 1188 for the definition of "vocational rehabilitation" in H.R. 7394, effectively removing the nexus requirement from the compromise legislation. Explanatory Statement, Pub.L. No.

466, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 4555, 4617, 4619–20; *see also* 126 CONG.REC. S13,589 (daily ed. Sept. 26, 1980).

As this legislative history makes clear, the deletion of a causal nexus requirement was not inadvertent. The Secretary does not point out, and the Court could not find, any legislative history which even remotely supports the proposition that the 1980 version of § 3102 was intended to include a causal nexus requirement. Indeed, the legislative history supports the position advanced by the appellant and the amici. In one respect, the legislative history makes this an even stronger case than *Gardner*, where the underlying statute remained silent but unchanged for sixty years; here, a causal nexus requirement of long standing was specifically and intentionally (*see* S.Rep. No. 96–746, 96th Cong., 2d Sess. 73–74 (1980)) eliminated. To say the least, the Secretary has failed to make an "extraordinary showing" of a "clearly expressed legislative intention contrary to the statutory language." *See Gardner*, 5 F.3d at 1459; *Glaxo*, 894 F.2d at 396.

## IV.

Neither the language nor the plain meaning of § 3102 requires that there be a causal nexus between a veteran's service-connected disability and that veteran's employment in order for the veteran to be entitled to chapter 31 vocational rehabilitation. *See Conroy*, —— U.S. at ——, 113 S.Ct. at 1565 (where one party argued that an additional requirement should be read into a particular statute because (1) the legislative history supported doing so, (2) the requirement was in other sections of the Act, and (3) "a literal interpretation produces illogical and absurd results," the Supreme Court held: "Neither separately nor in combination do these points justify a departure from the unambiguous statutory text.").

In sum, the text and reasonable inferences from it give a clear answer against the Government, and that, as we have said, is " 'the end of the matter.' " [Citations omitted.] Thus this clear textually grounded conclusion in [Davenport's] favor

is fatal to the remaining principal arguments advanced against it.
*Gardner*, —— U.S. at ——, 115 S.Ct. at 556.

We hold that the requirement of 38 C.F.R. § 21.51(c) that a veteran's service-connected disability must "materially contribute" to the veteran's employment handicap is inconsistent with § 3102 and, for that reason, not authorized by 38 U.S.C. § 501(a). Sections 21.51(c)(2), (e), (f)(1)(ii), and (f)(2), title 38, Code of Federal Regulations, to the extent that they require a causal nexus between a veteran's service-connected disability and that veteran's employment handicap, are held "unlawful and set aside" as "regulations issued or adopted by the Secretary ... in excess of statutory ... authority, or limitations." 38 U.S.C. § 7261(a)(3)(C).

Since the BVA rested its decision solely on the "materially contribute" requirement of 38 C.F.R. § 21.51, a remand is required for adjudication under the correct standard. On remand, the Board must address, inter alia, whether the appellant has an "employment handicap," i.e., "an impairment of [the] veteran's ability to prepare for, obtain, or retain employment consistent with such veteran's abilities, aptitudes, and interests." 38 U.S.C. § 3101(1). In addition, at oral argument, counsel advised the Court that upon review of the entire record, it is now the position of the Secretary that a remand was also required because the BVA did not resolve the appellant's claim of a serious handicap under 38 C.F.R. § 21.52(e). Counsel also expressed the view that the BVA should address the appellant's claim of headaches relative to an employment handicap, particularly in light of the fact that the record raises the possibility of a neurological disorder. The BVA will have the opportunity to address those and any other relevant matters on remand.

Accordingly, the September 10, 1991, BVA decision is VACATED, and this matter is REMANDED for further adjudication consistent with this opinion.