Citation Nr: 1331573 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 09-47 511 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUE

Entitlement to service connection for hypertension. 


REPRESENTATION

Veteran represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

D. Johnson, Counsel









INTRODUCTION

The Veteran, who is the appellant, served on active duty from October 1972 to May 1974. He had prior and subsequent service in the Air Force Reserve. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a May 2007 decision of a Department of Veterans Affairs (VA) Regional Office (RO). 

In July 2011, and in April 2013, the Board remanded the case for further development, which has been completed. Stegall v. West, 11 Vet. App. 268, 271 (1998). 


FINDINGS OF FACT

1. The current hypertension did not have onset during a period of active service; hypertension as a chronic disease was not manifest to a compensable degree within the one-year period following separation from active duty; and hypertension is not otherwise related to an injury, disease, or event during a period of active service.

2. The evidence is clear and unmistakable that hypertension pre-existed a period of ACDUTRA service and that there was no increase in severity during service. 


CONCLUSION OF LAW

The criteria for service connection for hypertension have not been met. 38 U.S.C.A. § 1110, 1154(a) (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2012). 





The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. 

Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The RO provided pre-adjudication VCAA notice by letter dated in January 2007. As for the content and the timing of the VCAA notice, the document complied with the specificity requirements of Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002) (identifying evidence to substantiate a claim and the relative duties of VA and the claimant to obtain evidence); of Charles v. Principi, 16 Vet. App. 370, 374 (2002) (identifying the document that satisfies VCAA notice); of Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004) (pre-adjudication VCAA notice); and of Dingess v. Nicholson, 19 Vet. App. 473, 484-86 (2006) (notice of the elements of the claim). 






Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The RO has obtained the Veteran's treatment records from his period of reserve service, VA and private treatment records, and records from the Social Security Administration. 38 U.S.C.A. § 5103A, 38 C.F.R. § 3.159. 

The Veteran's service treatment records from his period of active duty from October 1972 to May 1974 are missing despite the RO's attempt to locate the records. A formal finding of unavailability was issued in May 2003. There is no indication in the record that any additional evidence, relevant to the issue decided, is available and not part of the claim file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

VA obtained a medical opinion in June 2013. As the opinion contains pertinent medical history and findings, it is adequate to decide the claim. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007) (a medical examination must be based on consideration of the history and describe the disability in sufficient detail so that the Board's evaluation of the claimed disability will be a fully informed one). 

As the Veteran has not identified any additional evidence pertinent to the claim and as there are no additional records to obtain, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist.







REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Principles and Theories of Service Connection

A Veteran is entitled to VA disability compensation if there is a disability resulting from personal injury suffered or disease contracted in line of duty in active military service or for aggravation of a preexisting injury suffered or disease contracted in line of duty in active military service. 38 U.S.C.A. § 1110 (wartime service). 

In this case, several legal theories operate in conjunction with 38 U.S.C.A. § 1110 as implemented in 38 C.F.R. § 3.303.

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). 

Active service includes active duty and any period of active duty for training (ACDUTRA) during which the individual concerned was disabled from a disease or injury incurred or aggravated in line of duty. 38 U.S.C.A. § 101(24). 

Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111.






To rebut the presumption of sound condition for a disability not noted on the entrance examination, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. VAOPGCPREC 3-2003 (July 16, 2003).

Clear and unmistakable evidence that the disease or injury was not aggravated by service may be shown by a lack of aggravation, that is, no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); 38 U.S.C.A. § 1153. 

Generally, to establish entitlement to compensation for a present disability, a Veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. All three elements must be proved. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed.Cir. 2004).

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b). 

Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). 





Service connection for certain chronic diseases, including hypertension, may also be established based upon a legal "presumption" by showing that it manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. 

Hypertension is defined as diastolic blood pressure that is predominantly 90 millimeters (mm.) or greater, and isolated systolic hypertension is defined as systolic blood pressure that is predominantly 160 mm. or greater with a diastolic blood pressure of less than 90 mm. To support a diagnosis of hypertension, the blood pressure readings must be taken two or more times on at least three different days. See Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992); 38 C.F.R. § 4.104, DC (Note 1). 

The minimum compensable disability rating (of 10 percent) for hypertension requires diastolic pressure of predominantly 100 or more or systolic pressure of predominantly 160 or more; or if a claimant has a history of diastolic pressure of predominantly 100 or more and requires continuous medication for control. 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101.

Evidentiary Standards

VA must give due consideration to all pertinent lay and medical evidence in a case where a Veteran is seeking service connection. 38 U.S.C.A. § 1154(a). As the Veteran did not serve in combat, the combat provision of 38 U.S.C.A. § 1154(b) do not apply.

Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact (i.e. admissible); while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); see also Layno v. Brown, 6 Vet. App. 465, 469 (1994). 


Competency is a question of fact, which is to be addressed by the Board. Jandreau, v. Nicholson, 492 F.3d 1372, 1377 (2007).

When the evidence is admissible, the Board must then determine whether the evidence is credible. Credible evidence is that which is plausible or capable of being believed. See Caluza v. Brown, 7 Vet. App. 478, 511 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (the determination of credibility is a finding of fact to be made by the Board in the first instance). 

If the evidence is credible, the Board, as fact finder, must determine the probative value or weight of the admissible evidence, that is, whether the evidence tends to prove a material fact. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005). If the evidence is not credible, it has no probative value. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b). 

Facts 

During the period of active duty from October 1972 to May 1974, on a flight physical examination in June 1973, the blood pressure readings were 122/74, 118/82, 124/74. There are no other pertinent records available for the Veteran's period of active duty from October 1972 to May 1974.

After the period of active duty, and before the period of ACDUTRA, private medical records show that in October 1974 the Veteran requested diet pills to achieve weight loss. He informed the physician that he previously had been prescribed diet pills in service and he had lost weight. The treatment record indicates that the physician spoke with him at length about the hazards of diet pills, but the Veteran elected to use them. The Veteran was prescribed Tenuate. His blood pressure was 140/80 at the time. 


When seen for a one-month follow-up in November 1974, he was given another supply of Tenuate. His blood pressure was 140/82. 

The next entry is in April 1975 and shows the Veteran complained of a flopping sensation in his chest along with shortness of breath. The physician indicated that the Veteran did not have hypertension or any cardiac disease. The impression was to rule out anxiety disorder. 

The records from April 1975 to March 1976 do not show hypertension. Blood pressure readings were as follows: 

138/94 (April 1975); 136/84, 150/100 (May 1975); 140/100 (July 1975); 136/90, 150/88 (August 1975); 138/90 (December 1975); 164/110 (February 1976); 130/80 (March 1976); 166/90 (April 1976); 120/84, 140/90 (May 1976); 140/78 (April 1977); 140/92 (August 1977).

On examination for the Reserve in April 1978, blood pressure was 132/90; 120/70 (June 1978); 140/88 (May 1979); 130/90 (September 1979); 160/82 (July 1980); 130/80 (October 1981); 138/80 (November and December 1981); and 110/78 (March 1983).

Air Force Reserve records show the Veteran was on active duty for training from April 16, 1983, to April 30, 1983. During the period of ACDUTRA from April 16, 1983, to April 30, 1983, beginning on April 19, 1983, the six single readings over six days were: 168/92, 150/98, 138/90, 140/96, 140/92, and 124/82. The average mean blood pressure over five days was 138/92. The Veteran was instructed to make an appointment for an elevated blood pressure work-up. 

After the period of ACDUTRA, ending in April 1983 and until hypertension was noted in May 1988, the blood pressure readings were: 

138/90 (May 1983); 146/82 (January 1984); 118/78 (July 1984); 130/90 (September 1984); 144/90 (May 1986); 144/88, 144/90 (June 1986); 110/80 (July 1986); 132/76 (September 1986); 150/84 (November 1986); 140/86 (April 1987); 142/110 (June 1987); 140/86 (September 1987); 144/90 (October 1987); 140/100 (December 1987); 140/80 (April 1988); 140/90 (May 1988, benign hypertension noted); 130/100 (June 1988); 158/104, 168/122, 130/102 (September 1988, started on hydrochlorothiazide), changed to Tenormin by December 1988).

In July 2011, the Board remanded the case to afford the Veteran a VA examination and to obtain a VA medical opinion. The VA examination was conducted in September 2011. The VA examiner was asked to render an opinion, in part, on whether hypertension had onset during the period of on active duty for training from April 16, 1983, to April 30, 1983, or whether hypertension was a pre-existing condition that was aggravated by the period of active duty for training. 

The VA examiner expressed the opinion that hypertension was not consistently shown during the period of active duty for training and that hypertension was not aggravated during the period of active duty for training. With respect to the Veteran's contention that the weight loss pills he took in service were the cause of his currently hypertension, the VA examiner acknowledged that weight loss pills containing Phentermine can cause hypertension. 

The Board subsequently determined that the September 2011 VA medical opinion was not adequate to decide the applicable theories of service connection, namely, direct service connection and service connection by aggravation, and remanded the claim for another opinion in April 2013.





In June 2013, a VA examiner in the field of cardiology reviewed the Veteran's file. The VA examiner determined that the Veteran's hypertension had onset prior to his period of ACDUTRA service from April 16, 1983, to April 30, 1983. The VA examiner stated that the blood pressure readings from 1974 to 1983 were consistent with a diagnosis of hypertension. 

The VA examiner stated that hypertension clearly and unmistakably existed prior to ACDUTRA service and was clearly and unmistakably not aggravated beyond its normal progression by an in-service event or injury. The VA examiner explained that essential hypertension is a progressive disorder. The elevated blood pressure readings during ACDUTRA in April 1983 likely represented that natural progression of essential hypertension. The VA examiner stated that the documented blood pressure readings do not indicate any unusual pattern of exacerbation, and in fact, there does not appear to have been any increase during the period of April 16, 1983, to April 30, 1983. Rather, the blood pressure readings appeared generally lower than the numbers in the mid-1970s. The VA examiner determined that there was no evidence of secondary causes for the Veteran's hypertension. 

Analysis

38 C.F.R. § 3.303(a) (Affirmatively Showing Inception in Service)

For the period of active duty from October 1972 to May 1974, on the basis of the available service treatment records alone, hypertension was not affirmatively shown to have been present during a period of active service duty. 

There also is no indication that the hypertension, which preexisted entrance to the Veteran's period of ACDUTRA service from April 16, 1983, to April 30, 1983, was permanently aggravated by that period of service. 





The June 2013 VA medical opinion is probative and constitutes clear and unmistakable evidence that the Veteran's hypertension existed prior to his period of ACDUTRA service from April 16, 1983, to April 30, 1983, based on the blood pressure readings noted in the medical records. The evidence also clearly and unmistakably shows that the pre-existing hypertension was not aggravated during ACDUTRA. The June 2013 VA examiner's opinion that the preexisting hypertension was not aggravated during ACDUTRA is considered highly probative as the opinion is based on a review of the Veteran's history and of the evidence submitted by the Veteran. The VA examiner provided a clear opinion with supporting clinical rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). There is no other medical opinion to the contrary. 

Service connection under 38 U.S.C.A. § § 1110 and 1131 and 38 C.F.R. § 3.303(a) (affirmatively showing inception in service) is not warranted. 

38 C.F.R. § 3.303(b) (Chronicity and Continuity)

For the showing of a chronic disease in service there is required a combination of manifestations sufficient to identify the disease and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). 

Hypertension is listed as a chronic disease in 38 C.F.R. § 3.309(a), thus chronicity and continuity of symptomatology under 38 C.F.R. § 3.303(b) apply. However, as symptoms of hypertension were not noted, that is, observed, in service, and as there is no competent evidence either contemporaneous with or after service that symptoms of hypertension were noted during service, and as the Veteran has not asserted otherwise, the principles of service connection pertaining to chronicity and continuity of symptomatology under 38 C.F.R. § 3.303(b) do not apply. 






38 C.F.R. § 3.303(d) (Postservice Diagnosis)

Service connection may be granted for disability shown after service, when all of the evidence shows that it was incurred in service. 

The Veteran contends that his hypertension is related to military service to include the use of prescribed diet pills. The question, however, is whether the Veteran as a lay person is competent to offer an opinion on the causal relationship or nexus between the current hypertension and his military service. See 38 C.F.R. § 3.159 (Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience; lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person.); see Layno v. Brown, 6 Vet. App. 465, 469-71 (1994) (Lay testimony is competent as to symptoms of an injury or illness, which are within the realm of one's personal knowledge; personal knowledge is that which comes to the witness through the use of the senses). 

The Veteran as a lay person is competent to offer an opinion on a simple medical condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). And the Veteran as a lay person is competent to identify a simple medical condition, or describe a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Hypertension is not simple medical condition the Veteran is competent to identify, because the diagnosis falls outside the realm of common knowledge of a lay person, that is, the diagnosis cannot be made based on mere personal observation, which comes through sensory perception. And it is not argued or shown that the Veteran is otherwise qualified through specialized education, training, or experience to identify hypertension.




Hypertension is also not a condition under case law that has been found to be capable of lay observation. See Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfeet are capable of lay observation); see McCartt v. West, 12 Vet. App. 164, 167 (1999) (a skin condition is capable of lay observation; see Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus is capable of lay observation); see Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); and see Jandreau, at 1377, n. 4 (a lay witness is capable of diagnosing a dislocated shoulder or a simple medical condition, for example a broken leg, but not, for example, a form of cancer). 

Applying the guidance of current case law, hypertension is more analogous to an internal disease process such as rheumatic fever than either flatfeet, a skin condition, tinnitus, varicose veins, a dislocated shoulder, or a broken leg. For this reason, hypertension is not a type of condition under case law that has been found to be capable of lay observation. 

As hypertension is not a condition that can be identified based on personal observation, either by case law or as a simple medical condition, any inference based on what is not personally observable cannot be competent lay evidence. And no factual foundation has been established to show the Veteran is otherwise qualified through specialized education, training, or experience to offer an opinion on the causal relationship or nexus between hypertension and his periods of active duty and ACDUTRA service. For these reasons, the Veteran's lay opinion is not competent evidence of a causal relationship or nexus between hypertension and his periods of active duty or ACDUTRA service, including use of diet pills therein.

Since the Veteran's lay opinion is not competent evidence, the lay opinion is excluded, that is, not admissible as evidence and cannot be considered as competent lay evidence favorable to claim. As the lay evidence is not admissible, the Board need not reach the credibility of the evidence.



The Veteran, as a lay person, is competent report that he was prescribed diet pills in service. He also is competent to describe a contemporaneous medical diagnosis or symptoms that later support a diagnosis by a medical professional. Jandreau, at 1377. However, no medical professional had diagnosed hypertension before 1988 and no medical professional has attributed hypertension to his period of active duty or ACDUTRA service, to include the Veteran's reported use of diet pills therein. 

Although the July 2011 VA examiner stated that diet pills can cause hypertension, specifically, pills that contain Phentermine, but there is no evidence that the Veteran was prescribed such a medication as the Veteran has not provided the name of the pills or any other pertinent identifying information. The only identified prescription diet pill used by the Veteran was Tenuate and the pills were not prescribed during an annual tour or period of active duty for training. 

The Board has considered the Veteran's April 2012 statement that a VA physician told him that he had a clear case of hypertension documented in his records; however, the statement is not shown to have been contemporaneous with his active military service. Moreover, the physician's statement is not considered probative because there is no degree of specificity as to the period of service to which the finding relates or even if the finding relates to service at all. 

As the Veteran's lay evidence is not competent evidence on the material issues of fact, pertaining to onset in service or to initial post-service diagnosis, the Board looks to the medical evidence. 

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer a medical diagnosis, statement, or opinion. 38 C.F.R. § 3.159.

The probative value or evidentiary weight to be attached to a medical opinion is within the Board's province as finder of fact. 



The guiding factors in evaluating the probative value of a medical opinion include whether the opinion is based upon sufficient facts, and whether the expert applied valid medical analysis to the significant facts of the case in order to reach the conclusion rendered in the opinion. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-3 (2008).

The medical evidence consists of the June 2013 VA examiner's opinion, who is qualified through education, training, or experience to diagnose and to offer a medical opinion. The June 2013 examiner stated that hypertension clearly and unmistakably existed prior to ACDUTRA service and was clearly and unmistakably not aggravated beyond its normal progression by an in-service event or injury. The examiner also determined that there is no evidence of secondary causes for the Veteran's hypertension. The VA examiner supported the conclusion reached in his opinion with reasoned analysis. This opinion is persuasive evidence, which opposes, rather than supports, the claim. 

There is no other competent evidence, lay or medical, that shows hypertension is related to active duty or ACDUTRA service. 

38 C.F.R. §§ 3.307 and 3.309 (Presumptive Service Connection)

As for presumptive service connection for hypertension as a chronic disease, the preponderance of the evidence establishes that hypertension did not manifest to a compensable degree within the one-year presumptive period after discharge from service in May 1974. The private medical records fail to reflect a diagnosis of hypertension when the Veteran was evaluated in November 1974. In addition, in April 1975 the Veteran's then-treating physician determined that he did not have hypertension or any heart disease even though his blood pressure was 138/94 at the time. 





Furthermore, the blood pressure readings recorded in the April 1975 and May 1975 private records do not establish a diagnosis of hypertension because the readings were not taken two or more times on at least three different days. See 38 C.F.R. § 4.104, DC 7101 (Note 1). The Board acknowledges the VA examiner's June 2013 general finding that the blood pressure readings from 1974 to 1983 establish hypertension. Nonetheless, the record fails to show that hypertension was manifest to a minimum compensable degree under DC 7101, specifically between May 1974 and May 1975, so as to establish service connection on a presumptive basis. 

Significantly, the readings shown do not support a finding of diastolic pressure that was predominantly 100 or more or systolic pressure of predominantly 160 or more; and there is no of a history of diastolic pressure of predominantly 100 or more with continuous medication required for control. For these reasons, presumptive service connection for hypertension, as a chronic disease under 38 C.F.R. §§3.307 and 3.309, is not warranted.

On the basis of the evidence of record, the Board concludes that the preponderance of the evidence is against the claim of service connection. As the preponderance of the evidence is against the claim, the benefit-of-the doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b). 


ORDER

Entitlement to service connection for hypertension is denied.



____________________________________________
George E. Guido Jr.
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs