Citation Nr: 1331568 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 08-10 952 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for hypertension (HTN). 


REPRESENTATION

Appellant represented by: Jill Mitchell, Attorney At Law


WITNESSES AT HEARING ON APPEAL

Veteran, his spouse and his sister


ATTORNEY FOR THE BOARD

L. J. Wells-Green, Counsel


INTRODUCTION

The Veteran served on active duty from June 1967 to June 1969. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, denying service connection for HTN on the basis that new and material evidence had not been submitted to reopen the claim. 

In October 2009, the Veteran, his wife and his sister testified at a Travel Board hearing at the RO before the undersigned Acting Veterans Law Judge. A transcript of that hearing has been associated with his claim folder.

In a March 2010 decision, the Board reopened and remanded the Veteran's claim for service connection for HTN. 

In an August 2011 decision, the Board denied service connection for HTN. The Veteran then appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In a February 2012 Order, the Court vacated the Board's decision pursuant to a Joint Motion. 

In January 2013, the Board remanded the case for further development, which has been accomplished. Stegall v. West, 11 Vet. App. 268 (1998). 


FINDING OF FACT

Hypertension was not manifested during service or to a compensable degree within the first year after discharge from service and is not etiologically related to service.




CONCLUSION OF LAW

Hypertension was not incurred in or aggravated by active service and may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2013). 


REASONS AND BASES FOR FINDING AND CONCLUSION

VA's Duties to Notify and Assist

Upon receipt of a complete or substantially complete application, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. VA must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide.

A March 2007 letter satisfied the duty to notify provisions. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). This letter also notified the Veteran of regulations pertinent to the establishment of an effective date and of the disability rating. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

In any event, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice. See Shinseki v. Sanders, 556 U.S. 369 (2009)(reversing prior case law imposing a presumption of prejudice on any notice deficiency, and clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination.) See also Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2006). 

The Veteran's service treatment records, VA medical treatment records and private treatment records have been obtained. The transcripts of his August 2008 and October 2009 personal hearings are also of record. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

VA examinations were conducted in November 2008 and May 2010. The Joint Motion asserted that the May 2010 examination was inadequate, and the Board accordingly obtained an addendum opinion to correct the inadequacy, which was provided in April 2013. The Board has reviewed the addendum opinion and finds it substantially complies with the requirements articulated in the Board's remand. D'Aries v. Peake, 22 Vet. App. 97 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

The examinations, in aggregate with the addendum, are adequate as they are predicated on examination of the Veteran and offer opinions regarding the etiology of any currently diagnosed HTN that address the relevant evidence of record. In reaching this determination, the Board notes that the April 2013 addendum report specifically addresses the in-service elevated blood pressure readings in May 1969 and offers an opinion on whether those readings were early manifestations of later diagnosed HTN with supporting rationale. The record does not reflect that these examinations, in aggregate, are inadequate for rating purposes. 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). 

The appellant was afforded a hearing before the Board. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2010) requires that the VLJ who chairs a hearing explain the issues and suggest the submission of evidence that may have been overlooked. Here, the AVLJ identified the issues to the claimant and asked specific questions directed at identifying whether the appellant met the criteria for service connection. Additionally, the appellant volunteered his history and symptoms since service. The appellant has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. The hearing focused on the elements necessary to substantiate the claims, and the appellant provided testimony relevant to those elements. As such, the Board finds that no further action pursuant to Bryant is necessary, and the appellant is not prejudiced by a decision at this time.

The most recent Joint Motion for Remand, as incorporated by the Court's Order, expressed no issues regarding duties to notice and assist. The Board is confident that if any additional VCAA defects existed in its previous decision, such defects would have been brought to the Court's attention in the interest of judicial economy.

There is no indication in the record that any additional evidence, relevant to the issue decided, is available and not part of the claims file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 at 486 (2006); Shinseki v. Sanders/Simmons, 556 U.S. 369 (2009).

Legal Principles

Under VA rating criteria, the term "hypertension" means that the diastolic blood pressure is predominantly 90mm or greater, and "isolated systolic hypertension" means that the systolic blood pressure is predominantly 160mm or greater with a diastolic blood pressure of less than 90mm. 38 C.F.R. § 4.104, Diagnosis Code 7101, Note (1).

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. 38 C.F.R. § 3.303(a); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

Disorders diagnosed after discharge will still be service-connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection for certain chronic disorders, such as HTN may be established based on a legal "presumption" by showing that the disability manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. § 1101, 1112; 38 C.F.R. §§ 3.307, 3.309.

For the conditions explicitly recognized as "chronic" under 38 C.F.R. § 3.309(a), the provisions of 38 C.F.R. § 3.303(b) provide an alternative method of establishing the second and third elements through a demonstration of continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Continuity of symptomatology may be shown by demonstrating "(1) that a condition was 'noted' during service or any applicable presumption period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson, 581 F. 3d at 1316; Jandreau v. Nicholson, 492 F. 3d 1372, 1377 (Fed. Cir. 2007). 

VA must give due consideration to all pertinent lay and medical evidence in a case where a Veteran is seeking service connection. 38 U.S.C.A. § 1154(a). As the Veteran did not serve in combat, the combat provision of 38 U.S.C.A. § 1154(b) do not apply.

Competency is a legal concept in determining whether lay or medical evidence may be considered, in other words, whether the evidence is admissible as distinguished from credibility and weight, factual determinations going to the probative value of the evidence, that is, does the evidence tend to prove a fact, once the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

Competency is a question of fact, which is to be addressed by the Board. Jandreau, 492 F.3d 1372, 1377.

Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465 (1994). In weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. See Caluza, 7 Vet. App. 478, 511, aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996). The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The Board may not ignore a veteran's testimony simply because he or she is an interested party and stands to gain monetary benefits; personal interest may, however, affect the credibility of the evidence. Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

If the evidence is credible, the Board, as fact finder, must determine the probative value or weight of the admissible evidence, that is, does the evidence tend to prove a material fact. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005). If the evidence is not credible, the evidence has no probative value. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b).

Evidence and Analysis

The Veteran and his representative assert that he is entitled to service connection for HTN. He argues that his currently diagnosed HTN had its onset in service as evidenced by elevated blood pressure readings in May 1969. Alternatively, he contends that he was diagnosed and treated for HTN within a year of his discharge. 

Service treatment records are negative for complaints, findings, treatment or diagnoses of HTN and there is no evidence of elevated blood pressure readings prior to May 1969. A May 1969 medical history report shows the Veteran denied any history of having experienced high or low blood pressure. The accompanying May 1969 separation examination report shows that a clinical evaluation of the Veteran's heart and vascular system was normal; however, his blood pressure reading was 140/100. As a result, he underwent a three day blood pressure check prior to discharge. His blood pressure readings over the three day period were 140/100 (the original reading at his separation examination), 138/80, 134/82, 110/68, 110/80, 124/92, and 120/90. The Veteran was not diagnosed with hypertension at that time and was found to be fit for separation from active service. 

In August 1969, the Veteran filed his initial claim for service connection for residuals of a low back disability. In April 1979 he filed a claim for nonservice-connected pension as a result of a back injury sustained after his separation from active service. A May 1979 VA examination report indicates that his blood pressure was 125/90. He again filed a claim for nonservice-connected pension for a low back disability in May 1988. He was afforded a VA examination in July 1988, which showed his blood pressure was 130/86. The examination report did not indicate that he had a diagnosis of HTN at the time. 

The earliest post-discharge medical evidence of diagnosed HTN is an October 2000 private hospital record indicating an impression that included HTN. 

A February 2005 VA examination report shows the Veteran reported that he received no medication for blood pressure control during his active duty service. He further reported that he was diagnosed with HTN when he was 28 and was given medication approximately six years after his discharge from service. After reviewing the Veteran's claims file, the examiner noted the findings from the Veteran's three day blood pressure check in May 1969 and stated that the findings were not considered to be hypertension by 1969 medical standards, but were considered a pre-hypertensive state by current medical standards. The examiner diagnosed HTN and noted that there was no documentation of HTN or treatment during active duty. 

Several VA treatment records, dated as early as September 2004, indicate that the Veteran had a ten year history of HTN. 

In an April 2007 written statement, the Veteran's sister reported that he complained of chest pain and had a rapid heartbeat and high blood pressure after his discharge from service. In another April 2007 written statement, an acquaintance of the Veteran's reported that after his discharge, the Veteran's nose would bleed at any given time, sometimes uncontrollably. She stated that she later learned that he had high blood pressure and that he told her he attributed his high blood pressure to his parachute jumps in service. 

In a February 2008 treatment record, the Veteran's private treating physician notes the Veteran's history of chest pain in service and the elevated blood pressure readings in May 1969. The physician opines that the Veteran's diagnosed coronary artery disease is a direct result of HTN which the examiner asserts was diagnosed while the Veteran was in service. In a May 2008 letter, the same physician indicates that he was able to review the Veteran's claims file and service medical records and stated that he was positive that the Veteran suffered from HTN in service that was untreated. He further noted that the Veteran now had coronary artery disease and it was documented that HTN is a leading cause of coronary artery disease. 

During his August 2008 personal hearing before a Decision Review Officer, the Veteran testified that he first experienced chest pains in service. He further testified that just prior to his discharge he had nosebleeds and high blood pressure readings and was given medication and bed rest to lower his blood pressure readings so he could be discharged. 

At his November 2008 VA examination, the Veteran reported that he had experienced elevated blood pressure since his separation from service and that he saw a doctor shortly after his discharge from service and was started on medication. He reported that he continued to take HTN medication since that time. The examiner confirmed a diagnosis of HTN. The examiner noted that the May 1969 three day check was not sufficient to constitute a diagnosis of HTN and that there was no documentation of a diagnosis of HTN in the intervening years after the Veteran's discharge. In this respect, the examiner noted that the Veteran had filed several claims for different VA benefits without filing a claim for service connection for HTN and reported only a ten year history of HTN in September 2004. The examiner opined that it was less likely as not that the Veteran's HTN occurred in active service. 

In November 2009, the Veteran's private physician again provided a statement in support of his claim. The physician reiterated that he had reviewed the Veteran's service treatment records and again opined that the May 1969 elevated blood pressure readings constituted HTN. 

During his October 2009 personal hearing before the undersigned, the Veteran testified that his first high blood pressure readings were in 1969 during his active duty service, but he could not recall if he was diagnosed with HTN at the time. He testified that after his discharge, he went to a doctor who diagnosed HTN in 1969. 

In May 2010, the Veteran was afforded another VA examination. After examining the Veteran and reviewing his claims file, the examiner opined that it was less likely as not that the Veteran's currently diagnosed HTN was related to his military service. In this regard, the examiner noted that according to the Joint National Committee Standard regarding a diagnosis of HTN, the average of two or more blood pressure readings at each of two or more visits after the initial screen should be used to determine the presence or absence of HTN. The examiner further noted that a normal blood pressure reading was systolic of less than 120 and diastolic of less than 80, and that pre-HTN was defined as a systolic of 120-139 or diastolic of 80-89. Stage I HTN was defined as systolic of 140-159 or diastolic of 90-99. The examiner noted that the Veteran's average blood pressure from the second day of his three day check was 136/81 and his average blood pressure from the third day of the three day check was 116/83. The examiner further noted that according to the definitions provided, the Veteran's blood pressure readings during active service did not meet the requirements for a diagnosis of HTN. The examiner further noted that there was no evidence indicating that the Veteran was diagnosed with HTN prior to the age of 28, some six years following his separation from active service. 

In an April 2013 addendum, the May 2010 VA examiner opines that the Veteran's pre-HTN as evidenced by the elevated blood pressure readings in service, was less likely than not an "early manifestation" of a later diagnosed HTN. In support of his opinion, the examiner notes that pre-HTN does not simply evolve into essential HTN, and that because there are multiple risk factor variables, several of which the Veteran has, his pre-HTN in service cannot accurately be described as an early manifestation of his later diagnosed essential HTN. 

The Board acknowledges that the Veteran is competent to give evidence about what he experienced; i.e., that he experienced chest pain, headaches and nosebleeds in service and that he first sought treatment shortly after his discharge from service in 1969 and was diagnosed with HTN. Charles v. Principi, 16 Vet. App. 370 (2002); Layno, 6 Vet. App. 465, 469. However, although he is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the Veteran is not competent to provide evidence as to more complex medical questions as in this case. Jandreau, supra.; Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Likewise, the Board finds the April 2007 statements from the Veteran's friend and acquaintance to not be competent to establish HTN within one year of his discharge from service. In this regard, the Board notes that the symptoms of HTN are not readily observable. 

The Board finds the Veteran's statements regarding his medical history to be inconsistent. Although he reported he was initially diagnosed with HTN six years after his discharge at his February 2005 VA examination, during his August 2008 hearing he testified that he was initially given medication and bed rest in service to lower his blood pressure, and later reported during his November 2008 VA examination and at his October 2009 hearing that a doctor initially diagnosed him with HTN shortly after his discharge. His accounts are not only internally inconsistent, they are also inconsistent with objective evidence of record as his service treatment records show no evidence that he was administered medication for high blood pressure or issued bed rest and 2004 VA treatment records show only a ten year history of HTN. The Board, as adjudicator of fact, does not accept the Veteran's statements as credible. 

Although the Veteran has submitted medical opinions from his treating physician that the elevated blood pressure readings in service establish that he had HTN in service, the preponderant and most probative evidence of record indicates that there is no evidence of HTN until at least six years after the Veteran's discharge from service, and his elevated blood pressure readings in service were insufficient to constitute a HTN diagnosis and were not an early manifestation of his later diagnosed HTN. 

The Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. Evans v. West, 12 Vet. App. 22, 30 (1998); Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. The first inquiry is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303-304 (2008). 

Although the Veteran's private physician reviewed the Veteran's claims file in rendering his opinion that the elevated blood pressure readings were evidence of HTN in service, the Board favors the opinions of the February 2005, November 2008 and May 2010 VA examiners. All the VA examiners reviewed the record as well, and the May 2010 examiner in particular provided a clear rationale for his findings of why the elevated blood pressure readings did not constitute a diagnosis of HTN and provided medical authority to corroborate his findings. Likewise, he offered compelling rationale for his opinion that the elevated readings were not an early manifestation of the later diagnosed HTN in the April 2013 addendum. Thus, the opinions of the VA examiners more fully comply with the criteria articulated in Nieves-Rodriguez and are deemed as more probative. 

In contrast, the Veteran's private treating physician offers no rationale for his certainty that the elevated blood pressure readings in service were untreated HTN and does not provide any medical evidence to support his opinion or to rebut the VA examiners' opinions and proffered medical evidence supporting their opinions. 

As there is no probative evidence showing HTN was manifest within one year of the Veteran's discharge from service, service connection cannot be presumed under 38 C.F.R. §§ 3.307, 3.309. 

The preponderance of the evidence is against the claim for service connection for HTN, and there is no doubt to be resolved. Accordingly, service connection for HTN is not warranted. Gilbert, 1 Vet. App. 49, 54-55.


ORDER

Service connection for hypertension is denied. 




____________________________________________
JOHN H. NILON
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs