Citation Nr: 1441518 
Decision Date: 09/17/14 Archive Date: 09/22/14

DOCKET NO. 11-28 555 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUE

Entitlement to service connection for chronic pancreatitis.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran 

ATTORNEY FOR THE BOARD

A. Hinton, Counsel





INTRODUCTION

The Veteran, who is the appellant, served on active duty from May 1991 to October 1994. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of a rating decision in November 2010 of a Department of Veterans Affairs (VA) Regional Office (RO). 

In June 2013, the Veteran appeared at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is in the Veteran's file. 

In accordance with 38 U.S.C.A. § 7109 and 38 C.F.R. § 20.901, in May 2014 the Board obtained a medical expert opinion from the Veterans Health Administration (VHA). The Veteran and his representative were provided a copy of the opinion and afforded the opportunity to submit additional evidence and argument. The Veteran's representative submitted additional argument. No addition evidence was submitted. 


FINDING OF FACT

The chronic pancreatitis was not affirmatively shown to have had onset during service, chronic pancreatitis as a chronic disease was not manifested to a compensable degree within one year after the separation from service; chronic pancreatitis is not related to an injury, disease, or event in service; and chronic pancreatitis is not caused by or permanently made worse by service-connected fusion of the lumbosacral spine at L4-L5 and L5-S1 or by medications for treatment of the service-connected disability.





CONCLUSION OF LAW

The criteria for service connection chronic pancreatitis have not been met. 38 U.S.C.A. §§ 1110, 1112, 5107(b) (West 2002); 38 C.F.R. § 3.303, 3.307, 3.309, 3.310 (2013).

The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented, in part, at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim.

Duty to Notify

Under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), when VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide.

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The VCAA notice must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet. App. 112 (2004).




The RO provided pre-adjudication VCAA notice by letter in June 2010. As for the content and the timing of the VCAA notice, the document complied with the specificity requirements of Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002) (identifying evidence to substantiate a claim and the relative duties of VA and the claimant to obtain evidence); of Charles v. Principi, 16 Vet. App. 370, 374 (2002) (identifying the document that satisfies VCAA notice); of Dingess v. Nicholson, 19 Vet. App. 473, 484-86 (2006) (notice of the elements of the claim); and of Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004) (pre-adjudication VCAA notice). 

Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. 

VA has obtained service records, and VA and private medical records. The Veteran was afforded VA examinations in June 2010, in November 2010, and in June 2012. In May 2014, in accordance with 38 U.S.C.A. § 7109 and 38 C.F.R. § 20.901, the Board obtained a medical expert opinion from VHA.

As the examination reports and VHA opinion are based on a review of the Veteran's history and described the current findings in sufficient detail so that the Board's review is a fully informed one, the examination reports are adequate to decide the claim. See Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). 

As there is no indication of the existence of additional evidence to substantiate the claim, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist. 



REASONS AND BASES FOR FINDING AND CONCLUSION

Principles of Service Connection 

A Veteran is entitled to VA disability compensation, that is, service connection, for a disability resulting from personal injury suffered or disease contracted in line of duty in active military service. 38 U.S.C.A. § 1110. 

Generally, to establish entitlement to VA disability compensation, that is, service connection, a Veteran must show: (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. All three elements must be proved. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished by affirmatively showing inception or aggravation during service. 38 C.F.R. § 3.303(a). 

Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). 

If a Veteran served 90 days or more on active duty, service incurrence will be presumed for certain chronic diseases, including endocrinopathies, which includes pancreatitis, if manifest to a compensable degree within the year after active service. 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307(a), 3.309(a).





Service connection may be granted if a disability is proximately due to or the result of a service-connected disability or if aggravation of a nonservice-connected disorder is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a).

Evidentiary Standards

VA must give consideration to all pertinent medical and lay evidence in a case where a Veteran is seeking service connection. 38 U.S.C.A. § 1154(a). 

Competency is a legal concept in determining whether medical or lay evidence may be considered, in other words, whether the evidence is admissible. Competency is a question of fact, which is to be addressed by the Board. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (2007).

Competency is distinguished from the weight and credibility of admissible evidence, which are factual determinations going to the probative value of the evidence, that is, does the evidence tend to prove a fact, once the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997). 

When the evidence is admissible, the Board must then determine whether the evidence is credible. "Credible evidence" is that which is plausible or capable of being believed. See Caluza v. Brown, 7 Vet. App. 478, 511 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (the determination of credibility is a finding of fact to be made by the Board in the first instance). 

If the evidence is credible, the Board, as fact finder, must determine the probative value or weight of the admissible evidence, that is, does the evidence tend to prove a material fact. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005). If the evidence is not credible, the evidence has no probative value. 




When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b).

Evidence 

The service treatment records show that between September 1991 and June 1993 the Veteran complained several times of gastrointestinal symptoms, including nausea, vomiting, diarrhea, stomach cramps, pain, and fever. The assessments including "questionable gastritis (peptic ulcer disease), gastritis, and viral gastroenteritis.

After service, service connection has been granted for fusion of the lumbosacral spine at L4-L5 and L5-S1.

In June 2008, the Veteran tested positive for acetaminophen and methadone. 

In January 2009, the Veteran was hospitalized at a private facility and the admitting diagnoses were acute pancreatitis, constipation, gastroesophageal reflux disease, and chronic pain. History including chronic back pain and medications for chronic pain, including methadone, 20 mg p.o. t.i.d.; ibuprofen as needed (p.r.n.) (the Veteran estimated a daily use of approximately 2400 mg); and acetaminophen as needed (p.r.n.). A CT scan was consistent with pancreatitis and steatosis of the liver. The impressions were abdominal pain of unclear etiology and chronic pain syndrome on chronic methadone therapy. 

In May 2009 on a gastroenterology consultation a private physician expressed the opinion that pancreatitis and constipation were likely related to prior alcohol use. Although the Veteran gave a history of ongoing abstinence. 





In November 2009, the Veteran was hospitalized for complaints of stomach pain and fever, the second episode of pancreatitis within one year. History included chronic low back pain after a failed fusion of the lumbosacral spine in 2004 with methadone therapy for last 2.5 years, and remote a history of alcohol abuse. 

The list of current medications included ibuprofen 600 mg, three times daily as needed; methadone 20 mg, every morning and lunch, 30 mg at bed time, and an 10 mg as needed throughout the day with a maximum of 80 mg in a 24-hour period; Tylenol 650 mg every six hours as needed; and AndroGel 7.5 grams applied topically daily. The final assessments were abdominal pain likely secondary to pancreatitis and chronic pain in the low back and to continue the medications.

In November 2009 on a gastroenterology consultation, the impression was acute pancreatitis with evidence of recurrent pancreatitis by CT scan, which was not clearly related to alcohol use. In January 2010 on follow-up, history included chronic narcotic dependence related to chronic low back pain and a one-year history of recurrent pancreatitis. The impression was chronic pancreatitis. The physician stated that chronic pancreatitis may be reflective of prior alcohol abuse, but alcohol abuse did not clearly explain recent recurrences of acute pancreatitis. The physician noted that delayed gastric emptying as a cause of additional symptoms including bloating and nausea, may be relate to chronic methadone use.

In June 2010 and in November 2010 on VA examinations, the same VA examiner expressed the opinion that pancreatitis was not likely related to the back disability and pancreatitis was more likely related to associated risk factors, such as past alcohol use.

In June 2012, on VA examination, the VA examiner stated that narcotics used for the Veteran's low back condition were not known to aggravate pancreatitis and that ibuprofen had been related to rare (less than one percent) episodes of pancreatitis.




In June 2013, the Veteran testified that chronic pancreatitis was due to the large doses of ibuprofen and Tylenol for his low back disability that started after his back surgery in April 2004 and that he had not used alcohol for several years. 

In May 2014, the Board obtained a VHA medical expert opinion. The VHA expert, a physician and Attending Gastroenterologist at a VA hospital, was asked for an opinion on two questions:

1. Whether the findings in service were manifestations of pancreatitis; and, 

2. Was pancreatitis caused by or aggravated by the medications for treatment of the service-connected lumbosacral spine disability? 

On the first question, after a review of the Veteran's medical history, the VHA expert expressed the opinion that he was unable to conclude that the Veteran had acute pancreatitis episodes during service, because there was no mention of possible pancreatitis and there was no supporting laboratory documentation, suggesting pancreatitis. The VHA expert explained that while nausea and abdominal pain are symptoms of pancreatitis the symptoms may also be associated with gastroenteritis, peptic ulcer disease, or gastritis. In support of his opinion, the VHA expert cited to the practice guidelines in acute pancreatitis in an article in the American Journal of Gastroenterology. 

On the second question, after a review of the Veteran's medical history, the VHA expert expressed the opinion that none of the Veteran's medications, ibuprofen, methadone, Tylenol (acetaminophen) was a likely cause of recurrent pancreatitis. 
In support of his opinion, the VHA expert cited to Lexi-Comp Drug reference, UpToDate (clinical resource providing practical treatment recommendations based on the best medical evidence), and the Journal of Gastroenterology and Hepatology. 





Analysis

The service treatment records show that several times the Veteran complained of nausea, vomiting, diarrhea, stomach cramps, pain, and fever, which were variously assessed as possible gastritis (peptic ulcer disease), gastritis, and viral gastroenteritis, but pancreatitis was not affirmatively shown to have had onset during service and service connection under 38 U.S.C.A. § 1110 as implemented by 38 C.F.R. § 3.303(a) (affirmatively showing inception in service) is not warranted. 

The Veteran as a lay person is competent to identify a simple medical condition, that is, one capable of lay observation, or describe a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. 
See Jandreau, at 1377. The Veteran as a lay person is also competent to offer an opinion on a simple medical condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

Therefore the Veteran as a lay person is competent to describe gastrointestinal symptoms, which are in the realm of his personal experience. 38 C.F.R. § 3.159 (Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience; lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person); see Layno v. Brown, 6 Vet. App. 465, 469-71 (1994) (lay testimony is competent as to symptoms of an injury or illness, which are within the realm of one's personal knowledge, personal knowledge is that which comes to the witness through the use of the senses; lay testimony is competent only so long as it is within the knowledge and personal observations of the witness).







While gastrointestinal symptoms are capable of lay observation, the presence of pancreatitis cannot be competently identified or diagnosed by the Veteran as a lay person based on mere personal observation, as such a diagnosis falls outside the realm of common knowledge of a lay person, that is, not capable of lay observation, without specialized education, training, or experience. 38 C.F.R. § 3.3159; Jandreau, at 1377. 

Also pancreatitis is not a type of condition under case law that has been found to be capable of lay observation. See Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfeet are capable of lay observation); see McCartt v. West, 12 Vet. App. 164, 167 (1999) (a skin condition is capable of lay observation); see Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus is capable of lay observation); see Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); see Jandreau, at 1377, n. 4 (a lay witness is capable of diagnosing a dislocated shoulder or a simple medical condition, for example a broken leg, but not, for example, a form of cancer).

Applying the guidance of the current case law, pancreatitis is an internal disease process, more analogous to diseases such as rheumatic fever than to flatfeet, a skin condition, tinnitus, varicose veins, a dislocated shoulder, or a broken leg. For this reason, pancreatitis is not a type of condition under case law that has been found to be capable of lay observation.

As pancreatitis is not capable of lay observation, pancreatitis is not a simple medical condition that the Veteran as a lay person is competent to identify or diagnose without specialized education, training, or experience. And no factual foundation has been established to show that the Veteran is otherwise qualified through specialized education, training, or experience to identify pancreatitis. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012) (the Board may find that lay evidence to diagnose a disability is not competent evidence).



Pancreatitis is a disease of the endocrine system. For a Veteran who served 90 days or more of continuous, active service, as the Veteran did, chronic diseases, such as endocrinopathies, including pancreatitis, shall be presumed to have been incurred in service even though there is no evidence of such disease during the period of service, if the disease becomes manifest to a degree of 10 percent within one year from date of separation from service. Here, pancreatitis was first documented in 2009, almost 15 years after separation from service in 1994 and well beyond the one year presumptive period for pancreatitis as a chronic disease under 38 C.F.R. §§ 3.307 and 3.309. 

As a chronic disease, pancreatitis is also subject to service connection by chronicity and by continuity of symptomatology under 38 C.F.R. § 3.303(b). See Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013) (presumption of service connection for a chronic disease manifested during service and then again at a later date applies only to enumerated chronic diseases under 38 C.F.R. § 3.309(a) and continuity of symptomatology avenue to service connection is available only for enumerated chronic diseases under 38 C.F.R. § 3.309(a) that are "noted during service" under 38 C.F.R. § 3.303(b)); the correct understanding of a condition "noted during service" is one that is indicative of but not dispositive of a chronic disease). 

Although the Veteran does not assert that chronicity and continuity of symptomatology apply, the VHA expert did state that while nausea and abdominal pain, as shown in service, are symptoms of pancreatitis, the same symptoms may also be associated with gastroenteritis, peptic ulcer disease, or gastritis. The VHA expert then was unable to conclude that the Veteran had acute pancreatitis episodes during service, because there was no mention of possible pancreatitis and there was no supporting laboratory documentation, suggesting pancreatitis. In support of his conclusion, the VHA expert cited to the practice guidelines in acute pancreatitis in an article in the American Journal of Gastroenterology.




The conclusion of the VHA expert is persuasive evidence that chronicity does not apply and as the gastrointestinal symptoms in service are not shown to have been indicative of pancreatitis, pancreatitis was not "noted during service," and continuity of symptomatology also does not apply. 

As for service connection based on the initial diagnosis after service under 38 C.F.R. § 3.303(d), the Veteran has not submitted any medical evidence and there is no evidence that pancreatitis was present before 2009 or that pancreatitis is related to an injury, disease, or event in service. 

The Veteran does assert that pancreatitis was caused by or aggravated by service-connected fusion of the lumbosacral spine and the medication for the treatment of chronic low back pain. 

The Veteran as a lay person is also competent to offer an opinion on a simple medical condition. Davidson, at 1316. The question is whether the Veteran as layperson is competent to offer an opinion on the cause or aggravation of pancreatitis. 

As previously explained pancreatitis is not simple medical condition that can be identified by the Veteran as a lay person based on personal observation, and any inference based on what is not personally observable cannot be competent lay evidence. And no factual foundation has been established to show that the Veteran is otherwise qualified through specialized education, training, or experience to offer an opinion on whether pancreatitis is caused by or aggravated by the service-connected fusion of the lumbosacral spine and the medication for the treatment chronic low back pain. 

For this reason, the Veteran's lay opinion is not competent evidence. Since the Veteran's lay opinion is not competent evidence, the Veteran's opinion is excluded, that is, not admissible as evidence and cannot be considered as competent lay evidence favorable to claim.


Although there is no competent lay evidence on the question of secondary service connection, there is competent medical evidence. 

In January 2010 on a follow-up of a gastroenterology consultation, the physician noted that delayed gastric emptying as a cause of additional symptoms including bloating and nausea, may be relate to chronic methadone use. As the statement is expressed in the term of "may" it is too speculative to establish a causal relationship and the opinion has no probative value. See Obert v. Brown, 5 Vet. App. 30, 33 (1993) (a medical opinion expressed in the term of "may" [the equivalent of possible] also implies "may or may not" and is too speculative to establish a medical nexus).

In June 2012, the VA examiner stated that narcotics used for the Veteran's low back condition were not known to aggravate pancreatitis and that ibuprofen had been related to rare (less than one percent) episodes of pancreatitis. The VHA expert, a physician and Attending Gastroenterologist at a VA hospital, expressed the opinion that none of the Veteran's medications, ibuprofen, methadone, Tylenol (acetaminophen) were a likely cause of recurrent pancreatitis. In support of his opinion, the VHA expert cited to Lexi-Comp Drug reference, UpToDate (clinical resource providing practical treatment recommendations based on the best medical evidence), and the Journal of Gastroenterology and Hepatology. 

As the VA examiner and the VHA expert applied medical analysis to the facts of the case and supported the conclusion reached in the opinion with a rationale based on review of the literature, the Board finds that the opinions of the VA examiner and VHA expert persuasive evidence, which opposes rather than supports, the claim. 







As there is no favorable, lay or medical evidence on the material question of a causal relationship between the pancreatitis and the service-connected fusion of the lumbosacral spine and the medication for the treatment chronic low back pain, the preponderance of the evidence is against the claim of service connection and the benefit-of-the doubt standard of proof does not apply. 38 U.S.C.A. §§ 1110, 5107(b); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310. 



ORDER

Service connection for chronic pancreatitis, including as caused by or aggravated by service-connected fusion of the lumbosacral spine and the medication for the treatment chronic low back pain is denied. 



____________________________________________
George E. Guido Jr.
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs