Citation Nr: 1452650 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 11-18 227 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to service connection for hepatitis C.


REPRESENTATION

Veteran represented by: AMVETS


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

A-L Evans, Associate Counsel




INTRODUCTION

The Veteran, who is the appellant, served on active duty from June 1971 to June 1975.

This matter is before the Board of Veterans' Appeals (Board) on appeal of rating decision in June 2010 of a Regional Office (RO) of the Department of Veterans Affairs (VA).

In October 2012, the Veteran appeared at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is in the Veteran's file. 

In January 2014, the Board remanded the case for further development, which has been completed. Stegall v. West, 11 Vet. App. 268, 271 (1998).


FINDING OF FACT

Hepatitis C was not affirmatively shown to have been present in service, and hepatitis C, first diagnosed after service, is unrelated to an injury, disease, or event in service.


CONCLUSION OF LAW

Hepatitis C was not incurred in service. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. § 3.303 (2014).







The Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate a claim. 

Duty to Notify

When VA receives a complete or substantially complete application for benefits, it will notify the claimant of the following: (1) any information and medical or lay evidence that is necessary to substantiate the claim, (2) what portion of the information and evidence VA will obtain, and (3) what portion of the information and evidence the claimant is to provide. 

Also, the VCAA notice requirements apply to all five elements of a service connection claim. The five elements are: 1) veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess v. Nicholson, 19 Vet.App. 473, 484-86 (2006). 

The VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable adjudication by the RO. Pelegrini v. Principi, 18 Vet.App. 112, 119 (2004). 

The RO provided pre-adjudication VCAA notice by letter, dated in May 2010. As for the content and the timing of the VCAA notice, the document complied with the specificity requirements of Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002) (identifying evidence to substantiate a claim and the relative duties of VA and the claimant to obtain evidence); of Charles v. Principi, 16 Vet. App. 370, 374 (2002) (identifying the document that satisfies VCAA notice); of Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004) (pre-adjudication VCAA notice); and of Dingess v. Nicholson, 19 Vet. App. 473, 484-86 (2006) (notice of the elements of the claim). 

Duty to Assist

Under 38 U.S.C.A. § 5103A, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The RO has obtained service records and VA records and private medical records. 

The Veteran was afforded a VA examination in June 2014. As the examination was based on a review of the Veteran's history and described the disability in sufficient detail so that the Board's review is a fully informed one, the examination report is adequate to decide the claim. See Stefl v. Nicholson, 21 Vet.App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disabilities in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). 

As there is no indication of the existence of additional evidence to substantiate the claim, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist. 


REASONS AND BASES FOR FINDING AND CONCLUSION

Principles and Theories of Service Connection

A Veteran is entitled to VA disability compensation if there is a disability resulting from personal injury suffered or disease contracted in line of duty in active military service or for aggravation of a preexisting injury suffered or disease contracted in line of duty in active military service. 38 U.S.C.A. § § 1110, 1131 (peacetime service). 






Generally, to establish a right to compensation for a present disability, a Veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called "nexus" requirement. All three elements must be proved. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection means that the facts, shown by evidence, establish that a articular injury or disease resulting in disability was incurred coincident with service, or if preexisting such service, was aggravated by service. This may be accomplished an affirmative showing of inception during service. 38 C.F.R. § 3.303(a).

Service connection may also be granted for disability shown after service, when all of the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). 

Evidentiary Standards

VA must give due consideration to all pertinent lay and medical evidence in a case where a Veteran is seeking service connection. 38 U.S.C.A. § 1154(a).

Competency is a legal concept in determining whether lay or medical evidence may be considered, in other words, whether the evidence is admissible as distinguished from credibility and from the weight of the evidence. Rucker v. Brown, 10 Vet.App. 67, 74 (1997).

Competency is a question of fact, which is to be addressed by the Board. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (2007).





When the evidence is admissible, the Board must then determine whether the evidence is credible." Credible evidence" is that which is plausible or capable of being believed. See Caluza v. Brown, 7 Vet.App. 478, 511 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (the determination of credibility is a finding of fact to be made by the Board in the first instance). 

If the evidence is credible, the Board, as fact finder, must determine the weight or probative value of the admissible evidence, that is, does the evidence tend to prove a material fact. Washington v. Nicholson, 19 Vet.App. 362, 369 (2005). If the evidence is not credible, the evidence has no probative value. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C.A. § 5107(b).

Evidence 

The service personnel records show that from October 1973 to August 1974 the Veteran was at Udorn, RTAFB Thailand. 

The service treatment records, including the entrance and separation examinations, contain no complaint, finding, history, treatment, or a diagnosis of hepatitis C, or of a tattoo or of ear piercing. On separation examination in January 1975, history included gonorrhea in 1974. On physical examination for identifying marks, scars, and tattoos, there was a single entry of a 3 inch transverse scar on the lateral aspect of the left leg. 

After service, private medical records document hepatitis C in May 2002. The private medical records contain no history of the etiology of hepatitis C. 





In March 2003, in his initial application for VA disability compensation, the Veteram claimed that hepatitis C began in "72," which he associated with a tattoo on his left bicep and exposure to Agent Orange in Vietnam. 

In January 2005, the Veteran submitted a copy of a photograph depicting a tattoo, "STAR," on the upper arm, which was the only subject matter of the photograph. 

In a statement in June 2010, the Veteran stated that in 1974 while at Udorn, Thailand, one night at a party he put a tattoo on and pierced his ear with needles that were shared with other airman and that there was bleeding from the arm and ear. 

In statements in May 2010 and in June 2010, the Veteran's brothers stated that the Veteran had a tattoo on his left arm when the he got out of service. One brother, a retired Army Colonel, a physician, stated that he was not surprised that the Veteran acquired hepatitis while on active duty when the Veteran got a tattoo and a pierced ear. The physician stated that after service the Veteran suffered from fatigue, musculoskeletal discomfort, intervals of emotional lability, sleep disturbance, excessive weight gain, and recurrent rashes on the lower extremities, characteristic of hepatitis. 

In June 2010, the Veteran submitted a copy of a photograph purportedly of himself with an easing in his left ear and with a date stamp of May 1974. 

In October 2012, the Veteran stated that in service when he received his tattoo and pierced ear, he shared the same knife and needle with seven other people, that he shared razors with others, and that he was given air gun injections. He stated that he was told that he had hepatitis C in 1993 after giving blood to the Red Cross. He stated that he went to see a private physician who verified that he had hepatitis C, but that he did not see another doctor again until 2002 when he had gallbladder surgery. He stated that he had not used intravenous drugs or had a blood transfusion. 


On VA examination in June 2014, the VA examiner reviewed the Veteran's history. The VA examiner noted that hepatitis C can take decades to develop under typical circumstances and that the length of time it took hepatitis C to develop coincided with the time period in which the Veteran served on active duty as well as a time before or after service. 

The VA examiner described the Veteran's risk factors for hepatitis C in service as sharing a needle and ink for a tattoo and ear piercing, sharing a toothbrush, air-gun injections, and a sexually transmitted disease. 

The VA examiner stated that each activity carried some risk of hepatitis C transmission, but that to offer an opinion regarding the contraction of hepatitis C from the risk factors would be complete speculation.

The VA examiner then stated that when using devices among multiple partners for a tattoo and ear piercing there was high plausibility of an opportunity for infection, but it was impossible to ascribe an absolute probability to the two events. The VA examiner stated that contracting hepatitis C from sexual contact was a known risk factor, although a lower risk than the sharing of blood. The VA examiner stated that there remained an area of significant debate regarding contracting hepatitis C from air gun injections. The VA examiner noted that while plausible, he was unaware of any documented instances of hepatitis C transmission in medical literature by air gun vaccination in the military.

The VA examiner concluded that assuming the Veteran's statement to be factually correct, he did have exposure to some of the well-established risk factors for transmission of hepatitis C, however, the risks were limited and there was no way of stating with any certainty that the risks were in fact exposure to hepatitis C. The VA examiner stated that it was impossible to render any meaningful probabilities of infection as other risks pre-dating and post-dating the Veteran's period of service were not known. 



Analysis 

The Veteran asserts that he contracted hepatitis C during service by tattoo, ear piercing, sexual contact, sharing of toiletry items, or air gun injections. 

On the basis of the service treatment records alone, hepatitis C was not affirmatively shown to have had onset during service and service connection under 38 C.F.R. § 3.303(a) is not warranted. 

As hepatitis C is not a chronic disease listed in 38 C.F.R. § 3.309(a), the theories of service connection pertaining to chronicity and continuity of symptomatology under 38 C.F.R. § 3.303(b) do not apply. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (The continuity of symptomatology avenue to service connection under regulation creating presumption of service connection for chronic diseases manifesting during service and then again at any later date is available only for chronic diseases enumerated in the only regulation listing named chronic diseases. 38 C.F.R. §§ 3.303(b), 3.309(a)). 

Although hepatitis C was first documented after service in 2002 and by history in 1993, service connection may still be granted even though the disability was first diagnosed after service, after considering all the evidence, including that pertinent to service under 38 C.F.R. § 3.303(d). 

The Veteran as a lay person is competent to describe a tattoo, ear piercing, sexual contact, shared razors and toothbrushes, and air gun injections. 38 C.F.R. § 3.159 (Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience; lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person.); see Layno v. Brown, 6 Vet. App. 465, 469-71 (1994) (Lay testimony is competent as to symptoms of an injury or illness, which are within the realm of one's personal knowledge; personal knowledge is that which comes to the witness through the use of the senses). 


The Veteran as a lay person is also competent to identify a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, at 1377. 

Hepatitis C is not simple medical condition the Veteran is competent to identify, because the diagnosis falls outside the realm of common knowledge of a lay person, that is, the diagnosis cannot be made based on mere personal observation. And it is not argued or shown that the Veteran is otherwise qualified through specialized education, training, or experience to identify hepatitis C.

Also hepatitis C is not a type of condition under case law that has been found to be capable of lay observation. See Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfeet are capable of lay observation); see McCartt v. West, 12 Vet. App. 164, 167 (1999) (a skin condition is capable of lay observation; see Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus is capable of lay observation); see Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); and see Jandreau, at 1377, n. 4 (a lay witness is capable of diagnosing a dislocated shoulder or a simple medical condition, for example a broken leg, but not, for example, a form of cancer). 

Applying the guidance of current case law, hepatitis C is more analogous to an internal disease process than either flatfeet, a skin condition, tinnitus, varicose veins, a dislocated shoulder, or a broken leg. For this reason, hepatitis is not a type of condition under case law that has been found to be capable of lay observation. 

The Veteran and his brothers without a medical background as lay persons are competent to offer an opinion on a simple medical condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). As hepatitis C is not the type of condition that can be identified based on personal observation either as a simple medical condition under Jandreau, or by case law, any inference based on what is not personally observable cannot be competent lay evidence. 



And no factual foundation has been established to show that the Veteran and his brothers without a medical background are otherwise qualified through specialized education, training, or experience to offer an opinion on the causal relationship or nexus between hepatitis C and the risk factors the Veteran described. For this reasons, the Veteran's lay opinion and the lay opinions of his brothers is not competent evidence. Since the Veteran's lay evidence is not competent evidence, the lay opinions are excluded as competent lay evidence favorable to the claim. 

Except the Veteran as a lay person is competent to describe a contemporaneous medical diagnosis or symptoms that later support a diagnosis by a medical professional. Jandreau, at 1377. There is no record that a medical professional diagnosed hepatitis C before 2002. 

As the Veteran's lay evidence is not competent evidence on the material issues of fact, pertaining to onset in service or to initial post-service diagnosis, the Board looks to the medical evidence. 

With regard to medical opinions the probative value or evidentiary weight to be attached to a medical opinion is within the Board's province as finder of fact. 

The guiding factors in evaluating the probative value of a medical opinion include whether the opinion is based upon sufficient facts, whether the Veteran had other risks factors for developing the claimed condition, and whether the opinion applied valid medical analysis to the significant facts of the case in order to reach the conclusion submitted in the opinion. Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007). Greater weight may be placed on one physician's opinion over another depending on factors such as reasoning employed. Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994).

As for the favorable medical opinion, the Veteran's brother, who is a retired Army Colonel and a physician, stated that the Veteran acquired hepatitis while on active duty and that after service the Veteran had manifestations of hepatitis. 


The Board finds that the opinion is not persuasive evidence on a material issue of fact, namely, exposure to hepatitis C during service, because the opinion assumes that an airman or a sexual partner with whom the Veteran shared the tattoo and piercing instruments was already infected with hepatitis C. As there is no way to determine or to know on the evidence of record that one participant had hepatitis C infection, it is simply a matter of conjecture, that is, an opinion based on speculation or stated differently an opinion based on insufficient evidence to ensure reliability. Evidence based on mere speculation or remote possibility does not rise to the evidentiary standard of reasonable doubt. 38 C.F.R. § 3.102. 

As for the unfavorable medical opinion, the VA examiner assumed that the Veteran's statements were factually correct about the risks factors in service, namely, getting a tattoo, ear piercing, sexual contact, sharing of toiletry items, or air gun injections, but unlike the favorable opinion the VA examiner concluded that the risks were limited and there was no way of stating with any certainty that the risks were in fact exposure to hepatitis C. The VA examiner stated that it was impossible to render any meaningful probabilities of infection as other risks, pre-dating and post-dating the Veteran's period of service, were not known. 

Although the VA examiner concluded that an opinion could not be rendered without resorting to speculation, the VA examiner adequately supported his conclusion that actual causation of hepatitis C could not be selected from several potential causes. See Jones v. Shinseki, 23 Vet. App. 382, 390, 91 (2009) (a medical examination is not inadequate because the medical examiner cannot reach a conclusion without resort to speculation). The Board finds that the VA examiner's opinion, which is evidence, opposes rather than support the claim and outweighs the favorable medical opinion.

The Board does not have the burden to find the cause of hepatitis C, which, unfortunately, may never be known, and the duty to assist does not extend to requiring a VA physician to render an opinion beyond what may reasonably be concluded from the procurable medical evidence. Jones at 23 Vet. App. 391. 



There is no favorable medical evidence that hepatitis C was due to sexual contact, sharing of toiletry items, or air gun injections. 

Also, in support of his claim, the Veteran submitted a "FACT SHEET: Workplace Exposure to Hepatitis C" to support his assertion that flu symptoms in service were manifestations of hepatitis C. As the evidence of record does not support the finding of exposure to hepatitis C in service, the material has no probative value.

As the preponderance of the evidence is against the claim of service connection for hepatitis C, there is no doubt to be resolved, and service connection is not warranted under the applicable theories of direct service connection. 38 C.F.R. § 3.303(a), (d). 


ORDER

Service connection for hepatitis C is denied.



____________________________________________
George E. Guido Jr.
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs